[No. 27720.   Department One.   April 17, 1940.]

*In the Matter of the Estate of* MINNIE ROUSE
CLAWSON, *Deceased.*[1]

[1]Reported in 101 P. (2d) 968.

*Hare, Turner & Maurier,* for appellant.

*Poe, Falknor, Emory & Howe,* for respondents Mendenhall *et al.*

*Hulbert, Helsell & Bettens,* for respondent Seattle-First National Bank.

ROBINSON, J.—The will of Minnie Rouse Clawson was executed in January, 1936. The testatrix declared all stocks, bonds, and other property then in, or thereafter placed in, a safety deposit box in Central Safe Deposit Vaults, Inc., to be community property, and bequeathed her interest therein to her husband, Bunnie Felix Clawson. She declared her dwelling house to be her separate estate, and bequeathed it, in equal, undivided shares, to her husband and to Vera Rouse Mendenhall, her daughter by a former husband. There was a small legacy to a niece. Her furniture was left to her husband, and the more intimate personal possessions, to her daughter. Finally, she declared all bonds and other property then in, or which might be thereafter placed in, a safety deposit box in the Seattle-First National Bank, to be her separate property, and bequeathed it and all the remainder and residue of her estate to her daughter, Mrs. Mendenhall, subject to certain limited trusts in favor of the Mendenhall children, and with a proviso that, if Mrs. Mendenhall should predecease her, all of the residuary estate should go to the Seattle-First National Bank in

trust for Mrs. Mendenhall's children. Vera Rouse Mendenhall and Bunnie Felix Clawson were nominated as executors, to serve without bond and without the intervention of any court.

Mrs. Clawson died on May 10, 1939. At that time, her daughter, Mrs. Mendenhall, was a permanent resident of the state of New Jersey. Having been advised (though wrongly) that, as a nonresident, she could not qualify as an executrix, she filed an instrument designated, "Resignation as Executrix and Request for Appointment of Administrator With Will Annexed." In this instrument, she asked that Mark F. Mendenhall, Sr., her father-in-law, be appointed as administrator with the will annexed, "to act jointly with the executor above named" (Bunnie Felix Clawson).

On the same day that Mrs. Mendenhall filed her renunciation of executorship, May 12, 1939, Bunnie Felix Clawson and Mrs. Mendenhall verified and filed a petition for the probate of the will. This petition recited that Mrs. Mendenhall resided in Summit, New Jersey, and, among other things, prayed:

"That the appointment of said Bunnie Felix Clawson as executor be confirmed and that Mark F. Mendenhall, Sr., be appointed administrator with the will annexed, *to act jointly with said executor;* he being a resident of King county and a proper person to so act." (Italics ours.)

The petition was granted by decree signed on May 15th. On May 17th, Clawson and Mendenhall, acting jointly, filed an inventory of the property of the estate, and the appraisal was completed on May 27th.

On June 5th, Clawson, describing himself as the widower of the deceased and the duly appointed, acting, and qualified executor, petitioned for a citation, directed to Mendenhall, Sr., and Mrs. Mendenhall, his daughter-in-law, to appear and show cause why Men-

denhall should not be removed as administrator, on the ground that he was appointed without due notice and because he had refused to include in the inventory a sum on deposit in a savings bank, amounting to $5,-018.55, alleged to have been carried in the joint account of Minnie Rouse Clawson and Vera Rouse Mendenhall. This was followed on June 7th by a petition in which Clawson prayed for an order citing the Seattle-First National Bank and Mrs. Mendenhall into court to show cause why a deposit of $5,018.55 should not be delivered to him as executor of the estate as being community property, and further praying that they be restrained from transferring any of that sum during the pendency of the matter.

Both show cause orders were made returnable on June 20th. On June 16th, Mendenhall filed his resignation as administrator. On June 17th, Mrs. Mendenhall petitioned to be appointed as executrix, setting up that she had not renounced voluntarily, but pursuant to mistaken legal advice that she was not eligible. Hearing on this petition was noted for June 20th. On June 19th, returns were filed to the show cause orders, setting up, in substance, that the bank deposit was the separate property of the deceased, had been carried in a joint account of mother and daughter, and regularly transferred by the mother to Mrs. Mendenhall four days before death. On June 19th also, Mrs. Mendenhall filed a petition asking that Clawson be cited to show cause why he should not be removed as executor, upon the ground that he had made claims contrary to the will and was acting adversely to the interests of the estate, etc. This order was also made returnable on the 20th.

There was other activity on June 19th. Sometime during the morning, attorneys for Clawson notified Mrs. Mendenhall's attorneys that, at eleven a. m., they

would apply to the court for an order of solvency. The application was made in due form. The court refused to consider the application at that time, in view of the character of the various hearings set for the next day.

Counsel for Clawson, on the afternoon of the 19th, applied to this court (cause No. 27640) for an alternative writ of mandate commanding the trial judge to proceed forthwith to consider petitioner's motion for an order of solvency and to refrain from considering any other matter in said probate cause until the question of solvency had been determined. This court refused to order the trial judge to refrain from proceeding to hear other matters pending in the cause, but directed him to hear the motion for an order of solvency forthwith, or, in the alternative, to show cause on June 30th why he should not do so.

On June 20th, all of the above matters came before the court, including the motion for an order of solvency, for appellant's counsel, at the opening of the hearings set for that day, insisted that this should be first taken up despite the issuance of the alternative writ by this court. The trial court was of the opinion that that phase of the controversy had been removed to this court and refused to deal with it; but evidence was taken and argument heard upon the various petitions and show cause matters.

Mendenhall had resigned. The trial judge was of the opinion that he had the power to appoint Mrs. Mendenhall, but that, under the facts and conditions shown at the hearing, it would be inadvisable to do so. On the other hand, the court felt that Clawson could not act impartially. Purporting to act under Rem. Rev. Stat., §§ 1444 and 1447 [P. C. §§ 9960, 9963], he removed Clawson as executor and appointed Seattle-First National Bank as administrator *de bonis non* with

the will annexed. At the hearing, the trial judge gave his reasons for this action, in part, as follows:

"I do not impugn Mr. Clawson's integrity in any sense, but I think Section 1444, of Remington's Revised Statutes, applies to him, and I think sufficient reasons have been developed in taking this case by its four corners from the evidence and everything that has developed here, including the arguments and the attitude of counsel, which indicate there is considerable hostility between these two people. I think to continue either or both of them is going to foment it further. I believe there should be an impartial administrator *de bonis non* with the will annexed, as the case may be."

In his findings, the trial judge elaborated upon his reasons for removing Clawson as follows:

"The testimony discloses that it is and will be the position of the said Bunnie Felix Clawson that virtually all of the estate of said deceased is the community property of himself and said deceased and that it is and will be the contention of Vera Mendenhall that all of said estate save that described in the Will as community property, was the separate property of said deceased. Taking at their face value the assertions contained in the Will in respect of the nature of the property of the deceased (as to whether the same was separate or community) said Will when read in connection with the inventory and appraisal discloses that the testatrix desired to leave the major portion of her estate to Vera Mendenhall, individually and as trustee, her daughter. In furtherance of his said personal interests the said Bunnie Felix Clawson sought the removal of the said Mark F. Mendenhall, Sr. as administrator with the will annexed of said estate and contested the appointment of Vera Mendenhall as executrix. By reason of his said personal interests the said Bunnie Felix Clawson has failed and will in the future fail to execute his trust faithfully and take care and promote the interests of all parties. That the conduct of the said Clawson has promoted unnecessary and costly litigation and strife in this matter and has resulted and will in the future result in damage to said

estate and the said Vera Mendenhall. The claims and personal interests of the said Bunnie Felix Clawson under the evidence in this case render it impossible for him to act as executor of said estate in harmony with any other executor or administrator whose views conflict with his own as to the community character of said property and the court finds that the aforesaid personal interests of the said Clawson has prevented him from acting as executor in a disinterested manner. . . . The best interests of said estate will be subserved by the removal of the said Clawson as executor and the appointment in his stead of Seattle-First National Bank, an entirely disinterested party, as administrator to act with independent counsel. The court finds that any other course would result in undue litigation which would defeat the very purpose of administration which is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss and without undue delay."

The appellant's statement of the questions involved in this appeal is as follows:

"(1) Where an executor has qualified under a nonintervention will, the inventory and appraisement is on file and the estate is in fact solvent, may the court refuse to enter an order of solvency and take jurisdiction of a petition by an heir for removal of the executor on the sole grounds of a conflict between the executor's personal interest and that of the estate, and of hostility between the executor and the heir, where there is neither allegation nor proof of breach of trust or bad faith by the executor, nor damage to interested parties?

"(2) May the court issue a show cause order for the removal of a nonintervention executor returnable the next day?

"(3) In such case may the court remove the executor and appoint a third person as administrator c. t. a. upon the sole grounds of such conflict of interest and hostility, where there is no showing of bad faith or breach of trust, or damage to interested parties?

"(4) Where a nonintervention will appoints two executors, and one qualifies but the other renounces,

may the court, on request of the renouncing executor, appoint an administrator c. t. a. to serve with the remaining executor?"

■ As to question 1, although it may be said that appellant qualified as executor under a nonintervention will, he did not qualify as a nonintervention executor, for, in his own verified petition, as shown by a quotation therefrom heretofore made, he asked to be appointed to act "jointly" with an administrator with the will annexed, and was so appointed. We quote from the decree admitting the will to probate:

"It is ordered . . . that Bunnie Felix Clawson, named in said Will, be and he is hereby appointed Executor of said Will; that he take and file the oath required by law; that said Mark F. Mendenhall, Sr., nominated by said petitioners, be, and he is hereby appointed Administrator with the will annexed, to act jointly with said executor . . . "

As his verified petition shows, Clawson voluntarily surrendered whatever right he derived from the will to act without the intervention of the court. He never became a nonintervention executor, since, by the terms of the order, he was not authorized to do any act, except by acting "jointly" with an officer of the court, which was the exact authority for which he prayed.

■ The pivotal question in this case is whether or not the court had jurisdiction to appoint an administrator to succeed Mrs. Mendenhall. We, therefore, pass to appellant's question 4.

When a testator makes a nonintervention will, he, of course, strongly relies upon the personal qualifications of the executor he names. If he appoints A, and A refuses to serve, no substitution could be made by the court, as no one could say that he would have trusted B or C to act without the intervention of a court. The statute, as we will later point out, specifically pro-

vides what shall be done in such a case as that. But where the testator appoints A and B, and B refuses to act, what happens? The nonintervention statute (Rem. Rev. Stat., § 1462 [P. C. § 9967]), unless it be quite liberally construed, does not indicate or provide what shall be done in such a case. We quote a sentence found about the middle of the section:

"Provided, however, in all cases, if the party named in such will as executor shall decline to execute the trust or shall die or be otherwise disabled for any cause from acting as such executor, then letters testamentary or of administration shall issue and the estate be settled as in other cases: . . . "

Apparently, this gives the court jurisdiction to forthwith appoint an administrator upon renunciation by *the* nonintervention executor. We have no means of knowing how the trial judge viewed the matter when the petition for the probate of the will was heard. But it seems apparent, from the order he entered, that he came to the conclusion that, since Mrs. Mendenhall was *a* party named in such will as executor, she could also be regarded as *the* party named in such will without doing violence to the statute. Such an interpretation would, of course, destroy the nonintervention character of a will naming more than one executor when one of them refused to serve or became disqualified, etc.

Perhaps, that was what the legislature intended should happen. Consider the present case, for example. Mrs. Clawson left part of her estate to her husband, a much greater part to her daughter, his step-daughter. Can anyone say that it was her intention, if for any reason her daughter could not serve as executor, that her husband should execute the will, acting alone and without the intervention of any court? However, it must be conceded that the validity of the suggested

construction of the statute is doubtful, and we do not here attempt to decide whether or not that construction is correct. It is clear, however, that, if it is not correct, the statute does not provide what shall be done when more than one executor is named in a nonintervention will, and one refuses or fails to serve.

In our opinion, the order of the court in appointing Mendenhall as administrator, to act jointly with Clawson as executor, did not violate any specific statute. Starting from that premise, the order appointing Mendenhall was valid, since it was one which, under the conditions obtaining, the court had full and complete statutory power and authority to make, under § 219, chapter 156, Laws of 1917, p. 706, Rem. Rev. Stat., § 1589 [P. C. § 9931].

Our statutory provisions concerning nonintervention wills comprise division XIII of the probate code, enacted by the legislature in 1917 as chapter 156 of the session laws of that year. In enacting this code, the legislature realized that it was beyond human power to foresee and provide definitely and specifically for all situations which might be presented to the superior courts when acting in probate. Having in mind that the primary object of the act was to provide for the prompt and orderly settlement of estates, it provided for situations unanticipated, and not specifically provided for, in § 219, p. 706, which is found in that division of the act, entitled: "General Provisions." We quote the section as it appears in Rem. Rev. Stat., § 1589:

"It is the intention of this act that the courts mentioned shall have full and ample power and authority to administer and settle all estates of decedents, minors, insane and mentally incompetent persons in this act mentioned. *If the provisions of this* [act] *with reference to the administration and settlement of such estates should in any cases and under any circumstances*

*be inapplicable or insufficient or doubtful, the court shall nevertheless have full power and authority to proceed with such administration and settlement in any manner and way which to the court seems right and proper,* all to the end that such estates may be by the court administered upon and settled." (Italics ours.)

■ As to questions 2 and 3, since we have found that Clawson did not attempt to qualify as a nonintervention executor, but submitted the will for administration and his official acts to the jurisdiction and control of the court, the court was not bound by the limitations of § 1462, relating to removal of nonintervention executors, for Clawson was not such an executor. The answers to what this leaves of questions 2 and 3 are found in Rem. Rev. Stat., § 1444, and particularly in those words of the section which we italicize:

"Whenever the court has reason to believe that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such executor or administrator, *or for any other cause or reason which to the court appears necessary,* it shall have power and authority, after citation and hearing to revoke such letters. *The manner of the citation and of the service of the same and of the time of hearing shall be wholly in the discretion of the court,* and if the court for any such reasons revokes such letters the powers of such executor or administrator shall at once cease, and it shall be the duty of the court to immediately appoint some other executor or administrator, as in this act provided."

This is the section of the statute under which the trial court purported to act. But it may be noted that the power to remove and substitute is given in equally

broad, if not more sweeping, terms in § 52 of the probate code (Laws of 1917, chapter 156, p. 655). This section appears as Rem. Rev. Stat., § 1422 [P. C. § 9938], and reads as follows:

"The court appointing any executor or administrator shall have authority for any cause deemed sufficient, to cancel and annul such letters and appoint other executors or administrators in the place of those removed."

In our opinion, the discretionary powers vested in the trial court by §§ 1422, 1444, and 1589 were wisely exercised.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.