IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No. 35737-6-III (consolidated |
| | ) | with No. 35855-1-III) |
| K. WENDELL REUGH | ) | |
| | ) | PUBLISHED OPINION |
| | ) | |

FEARING, J. — The principal question in this appeal is whether the superior court committed error when removing appellants JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives of the estate of K. Wendell Reugh and as co-trustees of the Reugh revocable living trust. Nevertheless, the expanse of this opinion covers mainly the topics of subject matter jurisdiction and waiver by failure to assert an argument in the trial court. We uphold the trial court's removal of the co-personal representatives and co-trustees and the appointment of a successor personal representative and trustee.

FACTS

We introduce the parties. This complicated appeal concerns the estate of K. Wendell Reugh, who died in March 2015, at the age of 86. Wendell Reugh's wife, Mary Ann Reugh, died in 1996. Wendell and Mary Ann Reugh's three children, JoLynn

Reugh-Kovalsky, Mark Reugh, and James Reugh, initiated this appeal. We refer to the three collectively as "the children."

The former co-personal representatives of Wendell Reugh's estate and former trustees of the K. Wendell Reugh revocable living trust (the Reugh trust), the daughter JoLynn Reugh-Kovalsky and Steve Gill, also appea trial court rulings. Gill is a long-time business associate of Wendell Reugh. We refer to the two alternatively as "Reugh-Kovalsky and Gill," "co-personal representatives," "personal representatives," and "co-trustees." Notice that we refer to JoLynn Reugh-Kovalsky differently depending on her role as a child or as a co-personal representative or co-trustee. The two respondents are Inland Northwest Community Foundation (Community Foundation), the purported residual beneficiary of the Reugh revocable living trust, and Northwest Trustee & Management Services (Northwest Trustee), the successor personal representative of the estate of K. Wendell Reugh and successor trustee of the Reugh trust.

Now the background. On January 4, 2011, K. Wendell Reugh, a successful Spokane businessman, executed a will and a revocable living trust. The will identified as heirs Reugh's three children, James Reugh, Mark Reugh, and JoLynn Reugh-Kovalsky and Reugh's close companion, Doreen Decker. The will bequeathed tangible personal property such as jewelry, household furniture, books, paintings, and automobiles to Reugh's heirs. The will then directed that the residuary estate pass to the "K. Wendell Reugh Revocable Living Trust" to be distributed in accordance with a separate trust

2

agreement.  Clerk's Papers (CP) at 337 (some capitalization omitted).

K. Wendell Reugh's January 2011 will named Dominic Zamora and James Simmons as personal representatives of the estate.  Portions of Article IV of the will further read:

> 2.  In the event either of said co-Personal Representatives is or becomes unwilling or unable to serve, then the other shall serve as co-Personal Representative and shall nominate three individuals to serve as co-Personal Representatives with him.  My children shall, by majority vote, designate one of said nominees to serve as the other co-Personal Representative.
> B.  My estate shall be administered by my Personal Representative named in this Will without the intervention of any court and with all powers granted herein and by law to a Personal Representative acting with nonintervention powers.  *I direct that such nonintervention powers be unrestricted* and that they may be exercised whether or not necessary for the administration of my estate.  My Personal Representative shall act with full power to:
> . . . .
> 2.  Select any part of my estate in satisfaction of any partition or distribution hereunder, in kind, in money, or both (including the satisfaction of any pecuniary bequest), in shares which may be composed differently, and to do so without regard to the income tax basis of specific property allocated to any beneficiary (including any trust).
> . . . .
> D.  Except to the extent fundamentally inconsistent with the provisions of this Will and of my estate plan, I hereby authorize my Personal Representative to disclaim, in whole or in part, any devise or legacy or any interest in any trust provided for my benefit under the Will of any person or under any trust instrument at any time within nine (9) months after the date of the transfer which created an interest in me.

CP at 337-38 (emphasis added).

Also, on January 4, 2011, K. Wendell Reugh signed a revocable living trust

agreement. The trust agreement also identified K. Wendell Reugh's three children. The trust instrument listed Wendell Reugh as both settlor and initial trustee of the trust. The document read that "[t]he Settlor hereby transfers to the Trustee the sum of One Hundred Dollars ($100.00)." CP at 342. Reugh, however, never transferred the $100 or any other property into the trust, at least during his lifetime. On Reugh's death, the trust, according to the terms of the trust agreement, would convert to an irrevocable trust. The trust instrument directed the trust to pay funeral expenses, costs of administration, estate taxes and other taxes resulting from Reugh's death and any debts owed by Reugh from the trust estate before any distribution to the residuary beneficiary.

The revocable living trust instrument listed gifts to be paid before any distribution of the trust assets to the residual beneficiary. The gifts included $250,000 to Wendell Reugh's sister, $20,000 to Reugh's niece, $20,000 each to two nephews, $10,000 to the Spokane Shriner's Hospital for Crippled Children, $25,000 to Spokane's United Central Methodist Church, $50,000 to Reugh's former daughter-in-law unless she had remarried, and $1.5 million to each of Reugh's three children. The Trust also directed that $1 million be transferred to a charitable remainder trust for the benefit of Doreen Decker.

The K. Wendell Reugh's Trust instrument anticipated that Wendell Reugh would establish a charitable foundation or a charitable donor-advised fund before his death. The revocable living trust agreement directed that the residuary of the trust estate, after payment of gifts, pass to either Reugh's charitable foundation, the donor-advised fund, or

4

both if Reugh had created both. The trust instrument read:

> 2. If Settlor established neither a charitable foundation nor a charitable donor advised fund, said remainder shall be distributed to the Inland Northwest Community Foundation, to be held as an endowed donor-advised fund known as the Wendell and MaryAnn Reugh Family Fund. Such fund shall have Settlor's three children as its initial advisors. Upon the death, disability or resignation of any such advisors, a replacement shall be appointed by the Board of Directors of the Inland Northwest Community Foundation from among the descendants (including descendants by adoption) of the Settlor. *Settlor wishes that charitable distributions be made from the fund primarily to the kinds of charitable organizations Settlor has given to during his lifetime, serving the people of the Inland Northwest*.

CP at 347-48 (emphasis added).

Similar to the will's identification of personal representatives for the estate of K. Wendell Reugh, Wendell Reugh named Dominic Zamora and James Simmons to serve as co-trustees "of this Trust and of any testamentary trusts established by the terms of this Trust." CP at 349. If the trustees were unable or did not wish to serve, the Trust provided for the selection of successor trustees through the same process that the will established for appointment of successor personal representatives, by which process the children would, by majority vote, choose among nominees.

K. Wendell Reugh died on March 22, 2015. Dominic Zamora and James Simmons thereafter declined their appointments as co-personal representatives of the estate of K. Wendell Reugh and co-trustees of the Reugh trust. On March 27, 2015, pursuant to Wendell Reugh's will and the revocable living trust instrument, the children

5

of Reugh appointed JoLynn Reugh-Kovalsky and Steve Gill as successor co-personal representatives and co-trustees.

On March 27, 2015, co-personal representatives JoLynn Reugh-Kovalsky and Steve Gill petitioned, under Spokane County Superior Court cause no. 15-4-00471-1, for probate of the will and the grant of nonintervention powers afforded in the will. The trial court entered an order admitting the will to probate, declared the estate solvent, and granted nonintervention powers to the co-personal representatives.

The estate of K. Wendell Reugh's administration has been complex due to Reugh's high net worth. The co-personal representatives toiled for two and one-half years to value the estate and to file an estate tax return. Beginning in 2016, the Internal Revenue Service fastidiously examined estate records.

JoLynn Reugh-Kovalsky and Steve Gill, as co-trustees of the revocable living trust, distributed to each beneficiary named in the trust the gift listed, including $1.5 million to each of Wendell Reugh's children. The distributions totaled nearly $5 million. Oddly, despite the distributions in accordance with the trust agreement, Reugh-Kovalsky and Gill contend they never administered the trust, but only administered the estate. They claim the trust never held any assets to administer.

On June 29, 2015, an attorney for the co-personal representatives and co-trustees wrote to the Community Foundation:

Please be advised that Inland Northwest Community Foundation has

been named in the K. Wendell Reugh Revocable Living Trust to receive residue funds. The amount of the funds to be distributed to Inland Northwest Community Foundation is unascertainable at this time. It will be quite some time before an appraisal of the estate assets is completed.

The funds are to be held as an endowed donor-advised fund, known as the Wendell and Mary Ann Reugh Family Fund. Such funds shall have the three Reugh children as its initial advisors.

As soon as it can be ascertained as to the amount of funds involved, I will notify you in behalf of the trust.

CP at 612.

The three children of Wendell Reugh and representatives from the Community Foundation planned to meet on December 4, 2015. The parties later canceled the meeting with the intention of resetting the meeting after the co-personal representatives filed the federal estate tax return.

JoLynn Reugh-Kovalsky and Steve Gill met with Thomas Culbertson, the estate of K. Wendell Reugh's attorney, in late December 2015. Reugh-Kovalsky and Gill mentioned during the meeting that Reugh, preceding his death, uttered comments about his wishes, which comments conflicted with the revocable living trust language. The attorney responded that the law would not assign any weight to the comments, but that the trust language controlled disposition of the estate. On January 8, 2016, the attorney wrote a letter to Reugh-Kovalsky and Gill, which read in part:

JoLynn, you have an obvious conflict of interest since on the one hand you are one of the specific beneficiaries and on the other hand you are a fiduciary as co-personal representative of Wendell's estate and co-successor trustee of his living trust. Conflicts of interest are common and

permissible in the context of trusts and estates; it is not the conflict itself which gets people into trouble, but what they do in light of the conflict.

As fiduciaries, there are a number of duties and responsibilities which you owe to all the beneficiaries, but there are two duties which are paramount. First, you have a duty of impartiality to the beneficiaries; that is, you cannot favor the interests of any beneficiary or group of beneficiaries over the interests of another beneficiary. Second, you have a duty of full disclosure; that is, a duty to keep all the beneficiaries sufficiently informed that they are in a position to protect their best interests. In short, you cannot (consistent with your fiduciary duties) treat the Community Foundation as an adversary, as you might if you had a dispute with another party as to which you owe no fiduciary duties.

CP at 185-86 (emphasis omitted). We do not know how this confidential letter, covered by the attorney-client privilege, became part of the court record.

On January 26, 2016, Dominic Zamora, accountant for the estate of Wendell Reugh, sent a letter to the Inland Northwest Community Foundation's counsel, which letter read, in part:

Our firm has been retained to prepare the associated state and federal estate tax returns for the Estate of K. Wendell Reugh. Mr. Reugh passed away on March 22nd, 2015. The personal representatives of the estate, Mrs. Jolynn Reugh-Kovalsky and Mr. Steve Gill, have asked me to prepare this letter as it relates to a charitable contribution to the Inland Northwest Community Foundation.

Mr. Reugh's will contains a charitable disposition. As such, we are prepared to transfer approximately $2.2 million to the Inland Northwest Foundation. The charitable contribution would consist of an IRA in the name of Mr. Reugh with an approximate fair market value of $1.5 million and approximately $720,000, which is the current actuarial value of the remainder interest in a charitable remainder unitrust created in Mr. Reugh's will. The transfers would be completed with a combination of cash and publicly traded securities by the end of the first quarter of 2016.

We ask that you talk with your client for the purposes of considering our proposal. If the Foundation finds this proposal suitable, we will have the necessary documents drawn up and complete the process of the transfer.

CP at 585. The letter did not disclose that the Community Foundation might receive $15 million through the trust. The Community Foundation rejected the co-trustees' offer.

In June 2016, JoLynn Reugh-Kovalsky and Steve Gill, as executors of Wendell Reugh's estate filed a federal estate tax return. The return confirmed that the Inland Northwest Community Foundation, a charity, would receive the remaining residue of Wendell Reugh's wealth, estimated at $15 million. Despite Reugh-Kovalsky and Gill claiming to have never activated the Reugh trust, the two identify themselves in the estate return as co-trustees. JoLynn Reugh-Kovalsky and Steve Gill never informed the Community Foundation of entries in the estate tax return.

On July 7, 2016, counsel for the Community Foundation received a letter from an attorney for Mark and Jim Reugh. The letter reads, in part:

. . . Jim and Mark hired us to ensure their late father's charitable objectives are carried out through the large charitable distribution in the Trust.

Mr. Reugh was a charitable man who wanted his charitable legacy continued by his children, his grandchildren, his great grandchildren, and to continue for a long time thereafter. Mr. Reugh openly discussed with his children, and his advisors, his desire to set up a private family foundation (hereinafter, "Reugh Family Foundation") to meet his charitable objectives. This discussion carried over to Mr. Tom Culbertson, who prepared the Trust and Mr. Reugh's Will. Mr. Culbertson drafted the Trust in anticipation that he would set up the Reugh Family Foundation for Mr. Reugh. For reasons unknown to Jim and Mark, Mr. Culbertson failed to set

9

up the Reugh Family Foundation and failed to carry out Mr. Reugh's charitable objectives.

The Reugh Family Foundation is critically important to Jim and Mark for two primary reasons. First, Jim and Mark desire to benefit charities that were important to their father during his lifetime. Most of these charities are outside the reach, and are not permissible donees, of the Inland Northwest Community Foundation. For example, charities to which Mr. Reugh contributed during his lifetime that would likely be donees of the Reugh Family Foundation include: (1) St. Jude Children's Research Hospital; (2) Pulmonary Fibrosis Foundation; (3) Foundation for Sarcoidosis Research; (4) American Macular Degeneration Foundation; (5) The Brain Aneurysm Foundation; (6) National Boy Scouts of America Foundation; (7) PATH; (8) Stand up for Kids; (9) Angel View; (10) Cure Alzheimer's Fund; (11) Literacy; and (12) Room to Read.

The second reason the Reugh Family Foundation is critically important to Jim and Mark is to continue their father's charitable ethic and instill this in their children (Mr. Reugh's grandchildren) and their grandchildren (Mr. Reugh's great grandchildren). Jim and Mark recognize and admire the great work the Inland Northwest Community Foundation does in Eastern Washington and Northern Idaho. However, the legal control that would be exercised by Inland Northwest Community Foundation over the charitable funds received from the Trust and the ultimate decision of what organizations would receive distributions from these charitable funds is contrary to Mr. Reugh's charitable objectives.

We acknowledge that Mr. Culbertson, in drafting the Trust, inserted the Inland Northwest Community Foundation as the "backup" recipient of Trust's residuary assets. We also acknowledge that Mr. Culbertson, in failing to establish the Reugh Family Foundation during Mr. Reugh's life, knew these funds would likely end up being distributed to the Inland Northwest Community Foundation under the terms of the Trust he drafted.

. . . .

Instead of engaging in expensive litigation to change the charitable beneficiary of the Trust, involving extensive fact finding into why Mr. Culbertson behaved the way he did, Jim and Mark desire to reach a compromise with the Inland Northwest Community Foundation to ensure their father's charitable legacy continues to benefit the charities important to their father. Consequently, Jim and Mark propose a binding Trust and Estate Dispute Resolution Act (TEDRA) Agreement, subject to approval by JoLynn Reugh-Kovalsky (as beneficiary and Co-Trustee), Steve Gill (as

10

Co-Trustee), and the Washington Attorney General (as a necessary party under RCW 11.110.120). We anticipate that a settlement, memorialized by a binding TEDRA Agreement, would provide for an immediate distribution to the Inland Northwest Community Foundation.

As expressed by the Co-Trustees of the Trust, if we are unable to settle, the residuary charitable distribution (whether to the Reugh Family Foundation, the Inland Northwest Community Foundation, or both) will not be made until all estate tax matters are settled with the Washington Department of Revenue and the Internal Revenue Service. Due to the nature of the assets included in Mr. Reugh's estate, lifetime taxable gifts made by Mr. Reugh, the taxable distributions included in the Trust, and the provision in the Trust that requires all estate tax and administration expenses be paid from the residue of the estate/trust, the Co-Personal Representatives and Co-Trustees have indicated that they do not anticipate completing the administration of the estate and trust, including making large distributions of the residue, until an estate tax closing letter has been issued by the Internal Revenue Service and the Washington Department of Revenue. Because the size of the taxable estate, and the very high likelihood Mr. Reugh's estate will be audited by the Internal Revenue Service, this audit and estate administration could be as short as a couple of years or could stretch out for a decade (or longer) if there is any estate tax litigation. There is no way of knowing for certain the timing of when the Internal Revenue Service or the Washington Department of Revenue will begin its review of the estate tax returns filed for Mr. Reugh's estate.

CP at 202-04.

On January 27, 2017, legal counsel for the Reugh children sent the Community Foundation's counsel a letter. The children's counsel acknowledged an earlier offer, but stated a closer inquiry into the facts surrounding the trust had led the children to conclude that Wendell Reugh never intended to activate the trust. The children now believed the trust to be invalid because the trustor named himself as the initial trustee and because the

11

trust was to be funded with a $100 transfer that Reugh never consummated. The January

27 letter continued:

> . . . [I]n the event Inland Northwest Community Foundation
> (INWCF) still has designs on the Reugh family's assets, this letter is
> intended to encourage INWCF to spend its resources elsewhere. As
> explained herein, Mr. Reugh's intent was to ensure that his children
> received his assets directly.
> . . . .
> . . . [I]f the beneficiaries are forced by INWCF to litigate to carry out
> their father's intent, then if they prevail, and benefit his estate thereby, they
> will seek recovery of all fees and costs. RCW 11.96A.150.
> In sum, this is notice of the beneficiaries' intent to claim their
> father's estate absent an invalid trust diverting his assets, and we will
> proceed in that vein. We are hopeful that INWCF will appreciate the
> foregoing, and Mr. Reugh's obvious intent, and avoid litigation in this
> distribution. If there are any issues, please let me know.

CP at 578, 582. Wendell Reugh's children have since sued Reugh's estate planning

attorney and alleged that the attorney failed to prepare documents to fulfill the intent of

Reugh.

On February 27, 2017, the children of Wendell Reugh filed a petition, under

Spokane County Superior Court cause no. 15-4-00471-1, the probate case number,

contesting the Reugh revocable living trust's validity. The caption only mentioned the

estate of K. Wendell Reugh. Paragraph 1.5 of the petition declared:

> 1.5 This Court has taken jurisdiction over the above numbered
> probate of the Estate of K. Wendell Reugh, and thus also has jurisdiction to
> hear this petition to contest the validity of the K. Wendall Reugh Revocable
> Living Trust.

CP at 28-29. The paragraph referenced a footnote, which read:

> *RCW 11.96A.040 (superior court has original jurisdiction in probate and trust matters); RCW 11.96A.020 (superior* courts has power and authority to administer and settle all matters concerning the estates and assets of deceased persons, including trust matters); *In Re Estate of Campbell, 46 Wn.2d 292, 297 (1955) (Superior* court has inherent power in probate proceedings to clarify status at any time).

CP at 29.

One week later, and on March 6, 2017, the children refiled the petition contesting the validity of the Reugh trust under Spokane County Superior Court cause no. 17-4-00311-7, without dismissing the petition filed in the probate proceeding. The caption for this petition named the estate of K. Wendell Reugh, but the caption added the children, JoLynn Kovalsky-Reugh, Mark Reugh, and Jim Reugh as petitioners. This second petition included the same paragraph 1.5 and footnote to the paragraph as found in the February 27 petition. The petition prayed for relief, in part:

> This Court should declare:
> 5.1 That Article III of the Reugh Will provision activating a trust is invalid. *Exhibit A, Last Will and Testament, Article III, Residuary Estate.*
> 5.2 That the Reugh Revocable Living Trust is an invalid trust. *Ex. B, K. Wendell Reugh Revocable Living Trust, Article II, "Trust Property."*

CP at 368.

On March 15, 2017, the superior court, on agreement of all parties, including the Community Foundation, consolidated the independent petition for declaration of trust invalidity with the probate proceeding. On March 20, 2017, JoLynn Reugh-Kovalsky and Steve Gill, as co-personal representatives of Wendell Reugh's estate, answered the

petition for invalidity, wherein they admitted that the probate court held jurisdiction to determine the validity of the trust and they admitted the petition's allegation of the invalidity of the trust. The co-personal representatives filed their answer under the probate proceeding cause number.

After filing the trust contest petition, the attorney for JoLynn Reugh-Kovalsky and Steve Gill, as co-personal representatives of the estate of K. Wendell Reugh, sent letters to the trust beneficiaries notifying them of the petition. The March 16, 2017 letters warned the beneficiaries that they would need to return their respective distributions received in 2015 if a court ruled the trust invalid. Nevertheless, Wendell Reugh's three children proposed to reimburse the trust on behalf of each distributee.

PROCEDURE

We now arrive at a motion that gives rise to this appeal. On November 22, 2017, the Community Foundation filed a motion, in the probate proceeding, to remove JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives of the estate of K. Wendell Reugh and as co-trustees of the Reugh revocable living trust due to a breach of fiduciary duties. In support of the motion, the Community Foundation's counsel filed a declaration that attached forty-six exhibits, including the co-personal representatives' answer agreeing to the Reugh children's petition to declare the trust invalid, the federal and state estate tax returns, Thomas Culbertson's January 8, 2016 letter to the co-personal representatives, the accounting firm's January 26, 2016 letter, and the children's

14

counsel's letter of January 27, 2017.

The trial court entertained the removal motion on December 8, 2017. In response to the motion, Wendell Reugh's three children argued that the Community Foundation failed to follow the proper procedure for removal. The children contended that the Community Foundation must file a petition, not a motion. According to the children, a motion is set for a motion docket, whereas a petition initiates an action and requires a show cause process. The children asked that the motion be dismissed.

The trial court commented that it did not wish to dismiss the motion, would treat the motion as a petition, would order the co-personal representatives to show cause as to why they should not be removed, and would schedule a hearing date for a sufficient time for JoLynn Reugh-Kovalsky and Steve Gill to respond. Counsel for the children replied:

> So what I'm hearing is, if I can paraphrase it in my procedural processes, what we're here on is essentially the prima facia [sic] show cause process that would enable the Court then to set it for hearing. To that extent, because we're here, I would like the opportunity to argue to the Court that there hasn't been a prima facia [sic] showing to even set it for a hearing.

Report of Proceedings (RP) at 6-7.

The trial court acknowledged that counsel could argue the lack of showing for a hearing and added: "I'm taking that as a decline [to order the co-personal representatives to show cause], which I understand because all the parties are present and it seems like both parties have evolved positions on this issue." RP at 7. The court entertained

15

argument on the merits of the removal motion. During the argument, the co-personal representatives never contended that the court lacked authority to remove them because of their nonintervention powers or because the Community Foundation did not qualify under RCW 11.68.070 as a party able to remove a personal representative.

At the conclusion of the hearing, the court ruled:

> The Court does find that there has been a cause for concern that rises to the potential of breaching fiduciary duty. There's been inconsistent dealings with the treatment of the Trust. The Court finds that there has been a prima facia [sic] showing. And, again, it's a prima facia [sic] showing, it's not the Court concluding beyond a reasonable doubt that a breach of fiduciary duty occurred because there was a lot of complicated matters. There has been a prima facia [sic] showing in the declaration and supporting materials regarding a breach of fiduciary duty and for that reason, the Court will select the remedy to remove Mr. Gill and Ms. Kovalsky. The Court is granting your [Community Foundation's counsel's] motion.

RP at 37-38.

After the trial court's ruling, counsel for the children remarked that a prima facie showing for removal of the personal representatives only served to set a later evidentiary hearing as to removal. Counsel contended that the children only agreed that day to proceed with a hearing to ascertain a prima facie showing. The trial court responded that he had offered the children an opportunity for a later hearing but they had declined. The court observed that due process had been afforded the children. The trial court ruled that a hearing on affidavits sufficed for a removal petition. In other words, the court need not entertain live testimony.

16

At the conclusion of the December 8 hearing, the trial court directed the parties to confer and agree on an independent fiduciary to succeed as personal representative and trustee, and, if the parties could not agree, each party should submit a name to the court. On December 20, 2017, the children recorded with this appeals court a notice of appeal of the trial court's order, without the entry of a formal written order, removing JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives and co-trustees.

The trial court conducted a presentment of order hearing on December 22, 2017. The children refused to recommend a successor personal representative or trustee because they asserted their notice of appeal precluded the trial court from further action. The children never contended that the trial court needed to follow Wendell Reugh's will's directions for the appointment of a successor personal representative. An unmoved trial court proceeded with the presentment hearing and signed an order removing JoLynn Reugh-Kovalsky and Steve Gill as personal representatives of the estate of K. Wendell Reugh and trustees of the Reugh trust. The order appointed Northwest Trustee as the successor personal representative and trustee.

The trial court entered the following findings of fact with the order of removal:

> 1. Petitioners [the children] argued that INWCF failed to comply with RCW 11.68.070 in seeking the removal of the co-personal representatives and co-trustees. The co-personal representatives and co-trustees did not raise any such argument on their own behalf.

17

2. The Court finds that INWCF substantially complied with RCW 11.68.070 in filing the Motion.

3. To the extent INWCF deviated from any procedure referenced in the statute, the co-personal representatives, co-trustees, and Petitioners were not prejudiced. The purpose of the requirement that a party seeking the removal of a personal representative file a "petition . . . supported by affidavit" making a "prima facie showing of cause for removal" is to prompt the court to rule on whether there are grounds to reassume jurisdiction over a nonintervention probate. *See In re Estate of Jones*, 116 Wn. App. 353, 362-63 (2003), *reversed on other grounds by In re Estate of Jones*, 152 Wn.2d 1 (2004) ("RCW 11.68.070 provides that the court may reassume jurisdiction over a nonintervention estate upon a showing that the executor has failed to faithfully execute his trust, or for any of the reasons specified in the court-supervised administration provisions of RCW 11.28.250.") (quotation marks omitted).

4. The Court reassumed jurisdiction over this probate when Petitioners filed their First Amended Petition to Contest the Validity of a Trust, which was filed months before the instant Motion. As jurisdiction had previously been reestablished, the Court was not required to make a separate jurisdictional determination under RCW 11.68.070.

5. The Court also afforded counsel the option of scheduling a separate hearing at which the co-personal representatives and co-trustees would be ordered to appear to address the merits of whether cause for their removal existed. Counsel for the co-personal representatives, co-trustees, and the Petitioners declined this option and agreed to proceed with oral argument at the motion hearing.

6. The co-personal representatives, co-trustees, and Petitioners had notice of the Motion, filed extensive opposition briefing and exhibits, and received a full opportunity to be heard at the hearing. The Court finds that due process was served.

7. The decedent's Last Will and Testament ("Will") contains a pour-over clause that, on its face, directs the decedent's assets, except certain personal property, to be transferred to the K. Wendell Reugh Revocable Living Trust ("Trust"). The Will also provides on its face that the decedent "make[s] no provisions . . . for any of my children who survive me."

8. JoLynn Kovalsky Reugh and Steve Gill are presently serving as the personal representatives of the Estate of K. Wendell Reugh ("Co-PRs") and trustees of the K. Wendell Reugh Revocable Living Trust ("Co-

18

Trustees"). Ms. Kovalsky is the decedent's daughter. Mr. Gill is the decedent's longtime business manager.

9. JoLynn Kovalsky Reugh is listed as a beneficiary of the Trust on the face of the Trust Agreement. The Trust Agreement states, on its face, that Ms. Kovalsky and her two siblings, Mark Reugh and James Reugh, are entitled to pecuniary bequests of $1.5 million each, subject to reductions for amounts received through other family trusts.

10. INWCF is listed as the remainder beneficiary of the Trust on the face of the Trust Agreement.

11. The Co-PRs and Co-Trustees owe fiduciary duties to INWCF. These duties require the Co-PRs and Co-Trustees to treat INWCF with the highest degree of good faith, diligence and undivided loyalty.

12. Petitioners JoLynn Reugh Kovalsky, Mark Reugh and James Reugh have filed a petition contesting the validity of the Trust. In contesting the validity of the Trust, the Petitioners are asserting a competing claim to funds that would otherwise be distributed to INWCF as the remainder beneficiary of the Trust, if the language of the Trust Agreement is given affect. Petitioners expressly stated their intent to claim these funds in a letter to INWCF's counsel dated January 27, 2017.

13. In making a competing claim to funds that would otherwise be distributed to INWCF, if the language of the Trust Agreement is given affect, JoLynn Reugh Kovalsky has created an irreconcilable conflict of interest. Ms. Kovalsky cannot fulfill the fiduciary duties of good faith, diligence and undivided loyalty that she owes to INWCF as a Co-PR and Co-Trustee while pursuing a competing claim to these funds as a beneficiary.

14. Ms. Kovalsky's conflict of interest is imputed to Steve Gill. Along with Ms. Kovalsky, Mr. Gill admitted the Petitioners' allegations about the purported invalidity of the Trust in a pleading filed by the Co-PRs in response to the Petitioners' First Amended Petition to Contest the Validity of a Trust. Like Ms. Kovalsky, Mr. Gill is no longer in a position to treat INWCF with the highest degree of good faith, diligence and undivided loyalty.

15. The Co-PRs and Co-Trustees have paid $4.875 million to nine beneficiaries listed in the Trust, including $1.5 million each to Ms. Kovalsky and her siblings; however, they now contend that the Trust is invalid. The Co-PRs and Co-Trustees now contend that the $1.5 million payments were made pursuant to the "Estate" and not the Trust. However, if the Co-PRs and Co-Trustees are correct that the Trust is invalid, the

payments of $1.5 million to Ms. Kovalsky and her siblings from the "Estate" would be expressly prohibited by the language of the will which specifies that the decedent "make[s] no provisions . . . for any of [his] children who survive [him].

16. In January 2016, the Co-PRs and Co-Trustees offered INWCF $2.2 million in full satisfaction of INWCF's right to receive a distribution under the Trust. The Co-PRs and Co-Trustees extended this offer without disclosing to INWCF that the anticipated distribution to INWCF under the Trust exceeded $16 million. The Court finds that the Co-PRs and Co-Trustees committed a serious breach of their fiduciary duties to INWCF in making a heavily discounted offer without disclosing the anticipated amount of the distribution INWCF would receive if the offer was rejected.

CP at 832-34 (alterations in original).

LAW AND ANALYSIS

JoLynn Reugh-Kovalsky and Steve Gill appeal their removal as the co-personal representatives of the estate of K. Wendell Reugh and co-trustees of the Reugh revocable living trust. Wendell Reugh's children join the co-personal representatives in forwarding each contention asserted in this appeal to reverse the removals. The appeal raises both procedural and substantive questions regarding removal of personal representatives.

*Issue 1: Whether the trial court had jurisdiction to hear the removal motion when the co-personal representatives held nonintervention powers?*

*Answer 1: Yes.*

Among other contentions, the co-personal representatives contend that the trial court lacked subject matter jurisdiction to remove them because K. Wendell Reugh's will and the probate court granted them nonintervention powers and because the Community

20

Foundation failed to follow the procedural statutes granting the court authority to remove personal representatives. We later address the personal representatives' underlying contentions that the trial court lacked authority, rather than subject matter jurisdiction, to address the removal request because the Community Foundation lacked standing to remove personal representatives, because the Community Foundation filed a motion rather than a petition, and because the probate court never signed a show cause order of sufficient cause for removal. We also later address whether the co-personal representatives waived any arguments by failing to assert the argument before the probate court. We first address the implications on jurisdiction due to nonintervention powers.

The co-personal representatives' arguments compel us to first decide if the trial court held, and, in turn, this reviewing court possesses, subject matter jurisdiction over the Community Foundation's removal motion. If the superior court lacked and this court lacks subject matter jurisdiction, we would summarily reverse the removal order. We would not even address whether the co-personal representatives waived any arguments in the trial court when responding to the removal motion.

A court must have subject matter jurisdiction in order to decide a case. *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 774, 397 P.3d 131, *review denied*, 189 Wn.2d 1018, 404 P.3d 493 (2017). Subject matter jurisdiction is the indispensable foundation on which valid judicial decisions rest, and, in its absence, a court has no power to act. *Eugster v. Washington State Bar Association*, 198 Wn. App. at 774.

Nevertheless, a court always has jurisdiction to determine whether it has jurisdiction over a particular case. *Eugster v. Washington State Bar Association*, 198 Wn. App. at 774.

A judgment entered by a court that lacks subject matter jurisdiction is void. *Marley v. Department of Labor & Industries*, 125 Wn.2d 533, 541, 886 P.2d 189 (1994). No time limit restrains an attack on a void judgment. *Allstate Insurance Co. v. Khani*, 75 Wn. App. 317, 324, 877 P.2d 724 (1994); *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). A party may raise a question of subject matter jurisdiction for the first time at any point in a proceeding, even on appeal. *In re Marriage of McDermott*, 175 Wn. App. 467, 479, 307 P.3d 717 (2013).

One constitutional provision governs the superior court's subject matter jurisdiction over probate proceedings. The very broad subject matter jurisdiction of the superior court is defined by this constitutional provision, not by statutes. *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011); *Young v. Clark*, 149 Wn.2d 130, 134, 65 P.3d 1192 (2003). Washington Constitution article IV, section 6, titled Jurisdiction of Superior Courts, declares:

> Superior courts and district courts have concurrent jurisdiction in cases in equity. The superior court shall have original jurisdiction in . . . *all matters of probate*, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.

(Emphasis added.) Note that superior courts hold subject matter jurisdiction over all probate matters. The Washington Constitution thereby alone compels us to hold the trial court possessed jurisdiction to remove the co-personal representatives.

In addition to the Washington Constitution granting superior courts extensive jurisdiction over probate disputes, numerous statutes also partially cover the power of the superior court to remove a personal representative. We first quote Washington statutes relevant to nonintervention powers. RCW 11.68.011 states:

> (1) A personal representative may petition the court for nonintervention powers, whether the decedent died testate or intestate.
> (2) Unless the decedent has specified in the decedent's will, if any, that the court not grant nonintervention powers to the personal representative, the court shall grant nonintervention powers to a personal representative who petitions for the powers if the court determines that the decedent's estate is solvent . . . and that:
> (a) The petitioning personal representative was named in the decedent's probated will as the personal representative;

K. Wendell Reugh's will directed the probate court to grant his personal representatives nonintervention powers. The solvency of Reugh's estate is an understatement.

RCW 11.68.090 delineates the nature of nonintervention powers:

> (1) Any personal representative acting under nonintervention powers may . . . have the same powers, and be subject to the same limitations of liability, that a trustee has under chapters 11.98, 11.100, and 11.102 RCW with regard to the assets of the estate, both real and personal, all without an order of court and without notice, approval, or confirmation, and in all other respects administer and settle the estate of the decedent without intervention of court. Except as otherwise specifically provided in this title or by order of court, a personal representative acting under nonintervention

23

> powers . . . is not obligated to comply with the duties imposed on personal
> representatives by that chapter [chapter 11.76 RCW]. . . .
>
> (2) . . . . However, notwithstanding the rest of this subsection, a
> personal representative may not be relieved of the duty to act in good faith
> and with honest judgment.

The notion of a nonintervention will is one that allows the executor to deal with the

estate's property without the need for court supervision. *In re Estate of Aaberg*, 25 Wn.

App. 336, 607 P.2d 1227 (1980).

RCW 11.68.070 addresses removal of a personal representative with

nonintervention powers:

> If any personal representative who has been granted nonintervention
> powers fails to execute his or her trust faithfully or is subject to removal for
> any reason specified in RCW 11.28.250 as now or hereafter amended, upon
> petition of . . . any heir, devisee, legatee, . . . such petition being supported
> by affidavit which makes a prima facie showing of cause for removal or
> restriction of powers, the court shall cite such personal representative to
> appear before it, and if, upon hearing of the petition it appears that said
> personal representative has not faithfully discharged said trust or is subject
> to removal for any reason specified in RCW 11.28.250 as now or hereafter
> amended, then, in the discretion of the court the powers of the personal
> representative may be restricted or the personal representative may be
> removed and a successor appointed. . . .

In turn, RCW 11.28.250, cited in RCW 11.68.070, declares:

> Whenever the court has reason to believe that any personal
> representative has wasted, embezzled, or mismanaged, or is about to waste,
> or embezzle the property of the estate committed to his or her charge, or has
> committed, or is about to commit a fraud upon the estate, or is incompetent
> to act, or is permanently removed from the state, or has wrongfully
> neglected the estate, or has neglected to perform any acts as such personal
> representative, or for any other cause or reason which to the court appears

necessary, it shall have power and authority, after notice and hearing to revoke such letters.

RCW 11.96A.040, a section of the Trust and Estate Dispute Resolution Act, grants jurisdiction to superior courts over probate and trust disputes. The section announces:

> (1) The *superior court* of every county has original *subject matter jurisdiction* over the probate of wills and the *administration of estates* of incapacitated, missing, and deceased individuals in all instances, including without limitation:
> . . . .
> (3) The superior courts may: Probate or refuse to probate wills, *appoint personal representatives*, administer and settle the affairs and the estates of incapacitated, missing, or deceased individuals including but not limited to decedents' nonprobate assets; . . . award processes and cause to come before them all persons whom the courts deem it necessary to examine; order and cause to be issued all such writs and any other orders as are proper or necessary; and do all other things proper or incident to the exercise of jurisdiction under this section.

(Emphasis added.)

Despite the Washington Constitution's and Washington statutes' grant of jurisdiction to superior courts, co-personal representatives JoLynn Reugh-Kovalsky and Steve Gill contend the superior court lacked jurisdiction to entertain the removal motion because of their nonintervention powers. Language in many decisions supports this contention. Based on the nonintervention powers statute and principles of estate administration, Washington courts have often written that the superior court loses jurisdiction, probably meaning subject matter jurisdiction, when it grants the personal representative nonintervention powers. In a long line of cases, Washington courts have

25

stated that, on entry of an order of solvency and the furnishing of any required bond, the court loses jurisdiction. *In re Estate of Coates*, 55 Wn.2d 250, 256, 347 P.2d 875 (1959); *In re Estate of Peabody*, 169 Wash. 65, 70, 13 P.2d 431 (1932); *In re Estate of Megrath*, 142 Wash. 324, 326-27, 253 P. 455 (1927); *Schubach v. Redelsheimer*, 92 Wash. 124, 125-26, 158 P. 739 (1916); *In re Estate of Bobbitt*, 60 Wn. App. 630, 632, 806 P.2d 254 (1991); *In re Estate of Aaberg*, 25 Wn. App. at 341-45 (1980). Based on this principle, one court characterized the superior court's jurisdiction in probate affairs as "ephemeral jurisdiction." *In re Estate of Aaberg*, 25 Wn. App. at 344.

As a corollary to the misguided statement of law, Washington courts have written that if, in the personal representative's judgment, matters arise in the settlement of the estate requiring judicial determination, he or she may reinvoke the jurisdiction of the superior court, either in equity or in probate. *In re Estate of Megrath*, 142 Wash. at 326. According to the same decisions, the recall of the superior court's jurisdiction must generally be of the personal representative's own volition. *In re Estate of Megrath*, 142 Wash. at 326.

We reject the language suggesting that a superior court loses subject matter jurisdiction in a nonintervention probate. Recent decisions of the United States Supreme Court, the Evergreen State Supreme Court, and this court have recognized confusion resulting from earlier courts' use of the word "jurisdiction" or the phrase "subject matter jurisdiction" to extend to concepts other than subject matter jurisdiction. *Steel Co. v.*

26

*Citizens for a Better Environment*, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *Marley v. Department of Labor & Industries*, 125 Wn.2d at 539 (1994); *Cole v. Harveyland, LLC*, 163 Wn. App. at 208 (2011). The best discussions of the overly energetic Washington pronouncements of lack of subject matter jurisdiction and the need to refute those pronouncements comes in other contexts from Judge Mary Kay Becker's opinion in *Cole v. Harveyland, LLC*, 163 Wn. App. 199 (2011) and Judge Steve Dwyer's analysis in *In re Marriage of McDermott*, 175 Wn. App. 467 (2013). Also in other settings, the United States Supreme Court has employed colorful language about "profligate" courts misusing the concept of subject matter jurisdiction and engaging in "drive-by jurisdictional rulings" about subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-11, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). Co-personal representatives JoLynn Reugh-Kovalsky and Steve Gill, in part, rely on this confusion to claim the trial court lacked subject matter jurisdiction to remove them from office.

The earlier injudicious pronouncements of law mistakenly extended the concept of subject matter jurisdiction to alien territory by erroneously referring to the grant of nonintervention powers as a loss of subject matter jurisdiction. Subject matter jurisdiction simply refers to the court, in which a party files a suit or a motion, being the correct court for the type of suit or character of a motion. The critical concept in determining whether a court has subject matter jurisdiction is the "type of controversy." *Marley v. Department of Labor & Industries*, 125 Wn.2d at 539 (1994); *In re Marriage of*

27

*McDermott*, 175 Wn. App. at 480-81 (2013). If the type of controversy is within the

subject matter jurisdiction, then all other defects or errors go to something other than

subject matter jurisdiction. *Marley v. Department of Labor & Industries*, 125 Wn.2d at

539. "Type" means the general category without regard to the facts of the particular case.

*Dougherty v. Department of Labor & Industries*, 150 Wn.2d 310, 317, 76 P.3d 1183

(2003). "Type" refers to the nature of a case and the kind of relief sought. *State v.*

*Barnes*, 146 Wn.2d 74, 85, 43 P.3d 490 (2002). A court or agency does not lack subject

matter jurisdiction solely because it lacks authority to enter a given order. *Marley v.*

*Department of Labor & Industries*, 125 Wn.2d at 539 (1994). Because of the draconian

consequences of a court acting without subject matter jurisdiction, appellate courts must

use caution when asked to characterize an issue as "jurisdictional" or a judgment as

"void" for lack of subject matter jurisdiction. *Cole v. Harveyland, LLC*, 163 Wn. App. at

205 (2011).

In line with established principles of subject matter jurisdiction, more recent

Washington decisions refer to nonintervention powers granted to a personal

representative as limiting the superior court's authority rather than ridding the court of

subject matter jurisdiction. "Jurisdiction" in the context of a nonintervention probate

refers to a court's authority, not subject matter jurisdiction. *In re Estate of Rathbone*, 190

Wn.2d 332, 339 n.4, 412 P.3d 1283 (2018). In *In re Estate of Jones*, 152 Wn.2d 1, 9, 93

P.3d 147 (2004), the state Supreme Court held that heirs of the estate could, based on

RCW 11.68.070, reinvoke the jurisdiction of the court in a nonintervention probate to seek removal of the personal representative because the superior court had never lost subject matter jurisdiction. Actually, this holding may be misleading because, if the superior court never lost jurisdiction, no party needed to reinvoke jurisdiction.

Subject matter jurisdiction simply means the claimant brought the suit in the right court. It does not mean that the claimant followed or completed the correct process. The International Court of Justice, a federal district court, a state district court, and a municipal court would not be the correct court in which to seek removal of a personal representative. The superior court is the correct and only correct court.

*Issue 2: Whether the trial court had subject matter jurisdiction to hear the removal motion when the movants failed to follow the statutory procedures?*

*Answer 2: Yes.*

RCW 11.68.070 allows an heir, devisee, or legatee to petition the superior court to remove a personal representative, even one with nonintervention powers. The petitioner must, according to the statute, file a petition with a supporting affidavit that establishes a prima facie cause for removal. In turn, the superior court must cite the personal representative to appear before it to respond to the petition.

The Community Foundation failed to follow these statutory procedures. Although the Community Foundation filed affidavits, the foundation filed a motion, not a petition. More importantly, the Community Foundation never obtained an order establishing cause

29

for removal and directing the co-personal representatives to appear to respond to the charges. Instead, the Community Foundation unilaterally scheduled its petition for a hearing.

The co-personal representatives contend that the Community Foundation's failure to follow the procedures demanded by RCW 11.68.070 denied the superior court of subject matter jurisdiction over the petition for removal. Based on our earlier analysis, we disagree. Jurisdiction of the superior court does not depend on compliance with all statutory procedural requirements. *Dougherty v. Department of Labor & Industries*, 150 Wn.2d at 315 (2003). Unless mandated by the clear language of the statute, Washington courts decline to interpret a statute's procedural requirements regarding location of filing as jurisdictional. *Dougherty v. Department of Labor & Industries*, 150 Wn.2d at 317. Therefore, the procedural demands of RCW 11.68.070 are not jurisdictional.

*Issue 3: Whether the trial court lacked authority to address the removal request because of the co-personal representatives' nonintervention powers?*

*Answer 3: We decline to address this issue since the co-personal representatives never asserted this argument before the superior court.*

We previously ruled that the superior court possessed subject matter jurisdiction to entertain the Community Foundation's motion to remove JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives. We now begin to address whether, despite subject matter jurisdiction, the trial court lacked authority under RCW 11.68.070 to

entertain the motion for various reasons. Reugh-Kovalsky and Gill first contend on appeal that the trial court lacked authority to entertain the removal motion because of their nonintervention powers.

Co-personal representatives JoLynn Reugh-Kovalsky and Steve Gill never asked the superior court to decline entertainment of the motion because of their nonintervention powers. At least, they fail to identify in the record where they asserted this legal position. A party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Detention of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144 (2007). A party must inform the court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

Because we decline to rule that nonintervention powers precluded the trial court from resolving the motion to remove, we do not address the Community Foundation's alternative argument that the trial court regained authority to hear the removal motion because the co-personal representatives filed a TEDRA suit for a declaration of the invalidity of the trust.

*Issue 4: Whether co-personal representatives JoLynn Reugh-Kovalsky and Steve Gill failed to assert the Community Foundation's qualification as an heir, devisee, or legatee before the trial court, and, if so, whether the co-personal representatives waived the right to assert this contention on appeal?*

31

*Answer 4: Yes.*

On appeal, JoLynn Reugh-Kovalsky and Steve Gill argue that the Community Foundation could not petition the superior court for removal of them because the foundation is not an "heir, devisee, or legatee" as required by RCW 11.68.070. The statute reads, in pertinent part:

> If any personal representative . . . fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250 . . . , upon petition of . . . *any heir, devisee, legatee*, . . . and if, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 . . . , then, in the discretion of the court . . . the personal representative may be removed and a successor appointed.

(Emphasis added.) In turn, the Community Foundation asks that we decline to entertain this argument because the co-personal representatives failed to assert this contention before the superior court. We grant the Community Foundation's request.

As already written, a party may not generally raise a new argument on appeal that the party did not present to the trial court. *In re Detention of Ambers*, 160 Wn.2d at 557 n.6 (2007). We may decline to consider an issue that was inadequately argued below. *International Association of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 36-37, 42 P.3d 1265 (2002); *Mid Mountain Contractors, Inc. v. Department of Labor & Industries*, 136 Wn. App. 1, 8, 146 P.3d 1212 (2006).

In reply to the Community Foundation's argument of waiver, JoLynn Reugh-Kovalsky and Steve Gill impliedly concede that they failed to assert before the superior

32

court that the Community Foundation was not a listed person to petition for removal. At least, the co-personal representatives fail to identify in the record where they challenged the Community Foundation's qualification to seek removal. The co-personal representatives instead argue that qualifying under RCW 11.68.070 as a petitioner to seek removal entails standing, that lack of standing may be asserted for the first time on appeal, that standing is jurisdictional, and that lack of jurisdiction cannot be waived by failure to assert the defense before the trial court.

The Community Foundation impliedly concedes that qualifying as one identified by RCW 11.68.070 equates to standing. We question the assumption of the parties that the Community Foundation's fulfillment of the requirement of being an "heir, devisee, [or] legatee" under RCW 11.68.070 concerns standing. Standing is more of having an interest in the outcome of the issue and the Community Foundation has an interest regardless of whether it is listed as a person under the statute that may petition for removal of a personal representative. The co-personal representatives seek to impact the Community Foundation's interest as a beneficiary under a trust. To have standing, a party need only be in a law's zone of interest and must suffer some harm. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007). Being a statutory designee to litigate and having standing may be distinct concepts. We do not address this question and proceed on the assumption that RCW 11.68.070 presents standing requirements.

33

Whether JoLynn Reugh-Kovalsky and Steve Gill waived the opportunity to challenge the Community Foundation's suitability to seek removal of the co-personal representatives presents the most difficult question for this appeal. Unfortunately, Washington courts inconsistently rule whether a party waives a challenge to standing if not asserted before the trial court. Because of recent modernizing of the concept of subject matter jurisdiction, we wonder whether standing should implicate subject matter jurisdiction as long as the court in question has power to entertain the type of case before it. To answer the waiver question, we explore the underpinnings of subject matter jurisdiction, and we ruminate on the reasons behind requiring a party to forward a contention before the superior court before raising it in the Court of Appeals. Based on this exploration and musing, we hold that Reugh-Kovalsky and Gill waived the contention.

Washington courts decide inconsistently whether a party waives a challenge to the opponent's standing when failing to assert the defense in the superior court. The following decisions hold or mention that the challenger to standing may raise the challenge for the first time on appeal. *International Association of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212-13 n.3, 45 P.3d 186, 50 P.3d 618 (2002); *Forbes v. Pierce County*, 5 Wn. App. 2d 423, 433 n.1, 427 P.3d 675 (2018); *Jevne v. Pass, LLC*, 3 Wn. App. 2d 561, 565, 416 P.3d 1257 (2018); *In re Estate of Alsup*, 181 Wn. App. 856, 875, 327 P.3d 1266 (2014); *Roberson v. Perez*, 119 Wn. App. 928, 933,

83 P.3d 1026 (2004), *aff'd*, 156 Wn.2d 33, 123 P.3d 844 (2005); *Mitchell v. Doe*, 41 Wn. App. 846, 848, 706 P.2d 1100 (1985). Under this line of cases, an appellate court can even raise the issue on its own. *In re Recall of West*, 156 Wn.2d 244, 248, 126 P.3d 798 (2006); *Branson v. Port of Seattle*, 152 Wn.2d 862, 875 n.6, 101 P.3d 67 (2004).

Other Washington cases hold that standing is waived and should not be considered for the first time on appeal. *State v. Cardenas*, 146 Wn.2d 400, 405, 47 P.3d 127, 57 P.3d 1156 (2002); *Tyler Pipe Industries, Inc. v. Department of Revenue*, 105 Wn.2d 318, 327, 715 P.2d 123 (1986), *vacated*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987); *Baker v. Teachers Insurance & Annuities Association College Retirement Equity Funds (TIAA-CREF)*, 91 Wn.2d 482, 484, 588 P.2d 1164 (1979); *Ahmad v. Town of Springdale*, 178 Wn. App. 333, 340, 314 P.3d 729 (2013), *review granted and case dismissed*, 180 Wn.2d 1013 (2014); *Krause v. Catholic Community Services*, 47 Wn. App. 734, 748, 737 P.2d 280 (1987). A plaintiff's right to sue cannot be objected to for the first time on appeal. *Bittrick v. Consolidated Improvement Co.*, 51 Wash. 469, 470, 99 P. 303 (1909).

The co-personal representatives argue that the cases holding that standing may not be asserted for the first time on appeal are older decisions impliedly overruled by recent decisions of the Supreme Court. Nevertheless, in 2002, the Supreme Court decided both *State v. Cardenas*, 146 Wn.2d 400 (2002) and *International Association of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207 (2002), the former case which holds that

standing may not be asserted for the first time on appeal. Recent Washington Court of Appeals decisions continue with the inconsistency.

The underpropping behind allowing lack of standing to be asserted for the first time on appeal is the contention that standing is jurisdictional. RAP 2.5(a) does not expressly allow the Court of Appeals to review a standing argument for the first time on appeal. The rule, however, permits the Court of Appeals to review a claimed error asserted for the first time on appeal if the error relates to the trial court's jurisdiction.

The concept of standing arises from the context of federal courts. The United States Constitution limits the jurisdiction of federal courts. Philip A. Talmadge, *Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems*, 22 SEATTLE U.L. REV. 695, 718 (1999). Article III, section 2, of the federal constitution lists limited types of cases to be heard by the federal judiciary. Therefore, standing, in federal courts, is always required for subject matter jurisdiction, and a federal court must examine jurisdiction if the parties fail to raise the issue. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).

Washington courts do not face such constitutional limitations. Washington Constitution article IV, section 6 affords state superior courts with jurisdiction, not only in certain types of cases, but "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." Thus, superior

courts, and, in turn, Washington appellate courts hold general jurisdiction. The only limit to Court of Appeals' jurisdiction is the controversy exceeding $200. WASHINGTON CONST. article IV, section 4; RCW 2.06.030; *City of Spokane v. Wardrop*, 165 Wn. App. 744, 746, 267 P.3d 1054 (2011).

Washington decisions also conflict as to whether standing looms as a prerequisite to superior court jurisdiction. Under one line of decisions, absent a party with standing, courts lack jurisdiction to consider a dispute. *Knight v. City of Yelm*, 173 Wn.2d 325, 336, 267 P.3d 973 (2011); *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986); *In re Estate of Alsup*, 181 Wn. App. at 875 (2014); *Postema v. Snohomish County*, 83 Wn. App. 574, 579, 922 P.2d 176 (1996). In *In re Estate of Alsup*, this court, on the basis of lack of jurisdiction, refused to hear a challenge to a ward's marriage by the ward's personal representative since the ward lacked standing to challenge the validity following the ward's death. In *Postema v. Snohomish County*, this court dismissed a citizen's challenge to the constitutionality of the growth management act because the challenger had suffered no prejudice from the operation of the act and thus lacked standing.

Other decisions stand for the proposition that a plaintiff's lack of standing does not remove subject matter jurisdiction from the superior court. *Trinity Universal Insurance Co. of Kansas v. Ohio Casualty Insurance Co.*, 176 Wn. App. 185, 198-99, 312 P.3d 976 (2013); *Donlin v. Murphy*, 174 Wn. App. 288, 293 n.7, 300 P.3d 424 (2013). Whether a

court has authority to act is determined independent of any inquiry into a petitioner's

standing to initiate judicial review. *Durland v. San Juan County*, 175 Wn. App. 316, 325

n.5, 305 P.3d 246 (2013), *aff'd*, 182 Wn.2d 55, 340 P.3d 191 (2014). Article IV, section

6 of the Washington Constitution does not exclude any sort of causes from the

jurisdiction of its superior courts, leaving Washington courts, by contrast with federal

courts, with few constraints on their jurisdiction. *Ullery v. Fulleton*, 162 Wn. App. 596,

604, 256 P.3d 406 (2011). Therefore, a defendant may waive the defense that a plaintiff

lacks standing. *Ullery v. Fulleton*, 162 Wn. App. at 604.

In *Trinity Universal Insurance Co. of Kansas v. Ohio Casualty Insurance Co.*, 176

Wn. App. 185 (2013), a subcontractor's insurer, after defending and settling a personal

injury claim asserted against the general contractor, brought action for subrogation

against the general contractor's insurer. The subcontractor's insurer included a claim for

violation of the Consumer Protection Act, chapter 19.86 RCW. The general contractor's

insurer sought to vacate a default judgment entered against it on the theory that the trial

court lacked subject matter jurisdiction to enter the judgment. According to the insurer,

the superior court lacked jurisdiction because the subcontractor's insurer lacked standing

to assert a Consumer Protection Act claim. The claim only accrued in favor of the

general contractor. This court repeated the teachings of *Cole v. Harveyland, LLC*, 163

Wn. App. 199 (2011) that a court should employ caution before declaring an issue to be

jurisdictional. Subject matter jurisdiction only implicates the court's authority to

entertain the type of suit. Therefore, in Washington, a plaintiff's lack of standing is not a matter of subject matter jurisdiction.

We consider *Cole v. Harveyland, LLC*, 163 Wn. App. 199 (2011) helpful, although not directly applicable. A former employee sued her employer under the Washington Law Against Discrimination, chapter 49.60 RCW, when the employer terminated her after she injured her knee. On appeal, the employer raised for the first time that it employed less than eight employees, the statutory threshold for liability. The employer argued that the trial court lacked subject matter jurisdiction because the employee had failed to show fulfillment of the statutory qualifications for a subject employer. This court declined to entertain the threshold argument. The court held that a statutory definition did not impose a jurisdictional requirement. We consider the language of RCW 11.68.070 with regard to an "heir, devisee, or legatee" to constitute a similar threshold issue that does not equate to a jurisdictional requirement.

The policies behind demanding that a litigant assert an argument in the trial court before raising the contention on appeal apply with force in JoLynn Reugh-Kovalsky's and Steve Gill's appeal. Courtesy demands that this court refrain from reversing the trial court on the basis of the Community Foundation's failure to qualify as a statutory petitioner when the co-personal representatives never afforded the trial court an opportunity to review this potential ground for reversal. Assuming the co-personal representatives are correct, the trial court could have summarily dismissed the

Community Foundation's motion for removal. Thus, a timely assertion of the contention would have conserved resources.

Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). RAP 2.5(a) formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than a right of any other sort may be forfeited by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944). Good sense lies behind this requirement. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials. *State v. Strine*, 176 Wn.2d at 749-50 (2013); *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988). The rule also

facilitates appellate review by ensuring that a complete record of the issues will be available. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d at 688.

We note that the Supreme Court wrote in *In re Estate of Rathbone*, 190 Wn.2d at 339 (2018) that the probate court can regain limited authority over the administration of a nonintervention will only if the executor or another person with statutorily conferred authority properly invokes it. Taken literally, this principle suggests that the trial court lacked authority to entertain the motion for removal of the co-personal representatives if the Community Foundation lacked statutory authority to seek removal. Nevertheless, the dispute in *Rathbone* involved the construction of a nonintervention will, not removal of a personal representative. More importantly, the *Rathbone* appellant did not raise a new argument on appeal and the Supreme Court did not address jurisdiction of the superior court.

In *Gross v. City of Lynnwood*, 90 Wn.2d 395, 583 P.2d 1197 (1978), the Supreme Court ruled that the particular statutory limitation on the class of persons entitled to a civil cause of action for age discrimination operates to define the specific facts on which relief may be predicated. In turn, the court held that a defendant may raise the plaintiff's failure to establish his membership in the class under RCW 49.44.040 for the first time on appeal. The court based its ruling on the principle that a party may raise failure to establish facts on which relief can be granted for the first time in the appellate court under RAP 2.5(a). We decline to follow *Gross v. City of Lynnwood* because the co-personal

41

representatives do not contend that we should accept review of standing for removal because the Community Foundation failed to establish facts on which relief can be granted. Also, the Supreme Court's recent pronouncements dilute the holding in *Gross*.

Issue 5: Whether the co-personal representatives waived the requirement that a petition, rather than a motion, be filed, that the petitioner establish a prima facie case of removal, and that the trial court enter an order to show cause preceding the trial on removal?

*Answer 5: Yes.*

We repeat again the statute controlling the removal of a personal representative in a nonintervention probate, RCW 11.68.070:

> If any personal representative who has been granted nonintervention powers fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250 . . . , *upon petition* of . . . any heir, devisee, legatee, . . . *such petition being supported by affidavit which makes a prima facie showing of cause for removal or restriction of powers, the court shall cite such personal representative to appear before it,* and if, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 . . . , then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed.

(Emphasis added.) The Community Foundation failed to comply with the process outlined in the statute. The Community Foundation filed a motion, not a petition. The Community Foundation never garnered a citation from the court after showing a prima facie case of removal. We previously ruled that this failure did not rid the superior court

of subject matter jurisdiction. We now ask whether the failure to follow the statutory procedure requires reversal and remand to begin the removal process anew. We hold otherwise because JoLynn Reugh-Kovalsky and Steve Gill and the children waived any right to fulfillment of the complete statutory process.

At the commencement of the December 8, 2017 removal hearing, Wendell Reugh's three children argued that the Community Foundation failed to follow the proper procedure for removal. The children asked that the motion be dismissed. In response, the superior court commented that it did not wish to dismiss the motion, but would order the co-personal representatives to show cause as to why they should not be removed, and would schedule a hearing date for sufficient time for JoLynn Reugh-Kovalsky and Steve Gill to respond. By then, the Community Foundation's counsel had filed a declaration that attached forty-six exhibits that presented a prima facie showing of a conflict of interest, including the January 8, 2016 letter from estate attorney Tom Culbertson informing them of a fiduciary duty to treat the Community Foundation fairly rather than advancing their own interests and the January 27, 2017 letter from JoLynn Reugh-Kovalsky's attorney threatening to impose substantial fees on the Community Foundation. The superior court did not offer a hearing for a prima facie showing with the possibility of a full hearing at a later date.

The children and the co-personal representatives never accepted the superior court's offer to enter a show cause order and conduct a later hearing. Instead, counsel for

the children erroneously stated that the court was offering a show cause hearing that very day. The superior court responded that it took counsel's response to be a declination of the offer to enter a show cause order and schedule a hearing for a later date. Neither the children nor the co-personal representatives then remarked that they did not wish to proceed with the hearing on the merits or that they wished for the superior court to enter a show cause and conduct a later hearing.

The children and the co-personal representatives either waived any objection to proceeding with a hearing on the merits or invited any error by refusing to accept an offer to postpone the hearing. We do not consider issues apparently abandoned before the trial court. *Holder v. City of Vancouver*, 136 Wn. App. 104, 107, 147 P.3d 641 (2006). Under the doctrine of invited error, a party may not materially contribute to an erroneous application of law at trial and then complain of it on appeal. *In re Dependency of K.R.*, 128 Wn.2d 129, 147, 904 P.2d 1132 (1995); *In re Detention of Rushton*, 190 Wn. App. 358, 372, 359 P.3d 935 (2015).

On appeal, the children contend that they agreed to proceed with a hearing, but only for purposes of dismissal. The superior court never gave the children that option. On appeal, the children and the co-personal representatives forward no argument that they were unprepared, on December 8, 2017, for a hearing on the merits for removal or that they would have presented any other arguments or evidence if the court had scheduled a later hearing.

44

No. 35737-6-III (cons. w/ 35855-1-III)
*In re Estate of Reugh*

*Issue 6: Whether the evidence and the superior court's findings support removal*

*of JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives?*

*Answer 6: Yes.*

We finally arrive at the merits of removing the co-personal representatives.

RCW 11.68.070 authorizes a superior court to remove any personal representative, in a

nonintervention probate, who "fails to execute his or her trust faithfully or is subject to

removal for any reason specified in RCW 11.28.250." In turn, RCW 11.28.250 declares:

> Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his or her charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters.

RCW 11.68.070, the nonintervention will statute, incorporates all grounds listed in

RCW 11.28.250 for removal of a personal representative. *In re Estate of Jones*, 152

Wn.2d at 11 (2004). RCW 11.68.070 and RCW 11.28.250 provide protection to

beneficiaries and other interested parties when a personal representative breaches his

fiduciary duties. *In re Estate of Jones*, 152 Wn.2d at 11.

The superior court must have valid grounds for removal, and the record must

support the grounds. *In re Estate of Beard*, 60 Wn.2d 127, 132, 372 P.2d 530 (1962); *In

re Estate of Aaberg*, 25 Wn. App. at 339 (1980). Nevertheless, if even one ground for

45

removal suffices, the decision for removal should be upheld on appeal. *In re Estate of Jones*, 152 Wn.2d at 10 (2004). A superior court holds wide discretion as to the grounds on which it may remove a personal representative, and a reviewing court will not ordinarily interfere with the discretion. *In re Estate of Beard*, 60 Wn.2d at 132.

The children highlight that the trial court resolved the removal motion without live testimony and by reviewing affidavits. The children argue that a ruling based only on written evidence should lead this court not to defer to the superior court's factual findings. We need not resolve our standard of review. Under either a de novo standard or a deferential standard, we would affirm the trial court's conclusions.

As with trustees, personal representatives of an estate owe a fiduciary duty to the heirs of the estate and must conform to the laws governing trustees. *In re Estate of Ehlers*, 80 Wn. App. 751, 761-62, 911 P.2d 1017 (1996); *In re Estate of Vance*, 11 Wn. App. 375, 381, 522 P.2d 1172 (1974). A personal representative stands in a fiduciary relationship to those beneficially interested in the estate. *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985). The representative must exercise the utmost good faith and diligence in administering the estate in the best interests of the heirs. *In re of Estate of Larson*, 103 Wn.2d at 521. An executor has a duty to defend the will. *In re Estate of Jennings*, 6 Wn. App. 537, 538, 494 P.2d 227 (1972).

*In re Clawson's Estate*, 3 Wn.2d 509, 101 P.2d 968 (1940) bears relevance to JoLynn Reugh-Kovalsky's and Steve Gill's appeal. The decedent's personal

representative claimed all of the estate as his property under community property laws.

Another heir claimed some of the decedent's property to be separate property. Because

of the contest, the court removed the personal representative.

The record establishes that JoLynn Reugh-Kovalsky and Steve Gill violated one or

more duties as fiduciaries to the estate of K. Wendell Reugh and the estate's heirs. The

two held a duty to comply in good faith with the terms of the will, which directed

placement of property into a trust, but they have instead sought to invalidate the trust.

The co-personal representatives acted contrary to the interests of the Community

Foundation and in violation of the duty of full disclosure, when they offered to distribute

$2.2 million to the Community Foundation in satisfaction of the Community

Foundation's share of the estate without informing the Community Foundation of the

possible entitlement to $16 million.

JoLynn Reugh-Kovalsky claims that she makes no competing claim against the

Community Foundation and that she only asks the superior court to resolve a dispute

about the validity of the trust. This contention fails to note that, as one of the children of

Wendell Reugh, she petitioned the court for invalidation of the trust. In a January 27,

2017 letter she wrote that her father actually intended that his children receive the assets

directly, an assertion establishing that Reugh-Kovalsky wants the $16 million for herself

and two siblings, not some other charity. In the same letter, the children threatened to

impose substantial attorney fees on the Community Foundation if it did not settle for a small sum.

The co-personal representatives direct our attention to Article IV, Section D of K. Wendell Reugh's will. The two claim that the section grants them the prerogative to disclaim the Community Foundation's interest in any trust. They misread the section, however, and thereby confirm the need for their removal. The section allows Reugh-Kovalsky and Gill to disclaim any interest that Wendell Reugh might gain in some third party's assets. The section does not authorize the personal representatives to violate the terms of the will, including the establishment of a trust. If the co-personal representatives held authority to disclaim any party's interest in K. Wendell Reugh's assets, one might ask why the personal representatives distributed $1.5 million to JoLynn Reugh-Kovalsky under the terms of the trust instead of disclaiming Reugh-Kovalsky's interest.

The co-personal representatives also assert the technical argument that Article VI, Section G of the trust agreement does not read that the Community Foundation is a beneficiary of the trust, but rather directs the Community Foundation to establish an endowed donor advised fund. Such language still directs that the Community Foundation benefit from the trust. The argument further demonstrates the many devices arrayed by the co-personal representatives to defeat an adversary, to whom they owe a fiduciary duty. The more they argue, the more the co-personal representatives show their antagonism to the Community Foundation.

JoLynn Reugh-Kovalsky and Steve Gill violated their duty of impartiality and loyalty by distributing almost $4.5 million among several beneficiaries, including co-personal representative JoLynn Reugh-Kovalsky, in the amount specified in the trust agreement. These distributions conflict with their position that the trust is not valid and that they have never acted as co-trustees of the Reugh trust. At the same time, Reugh-Kovalsky and Gill denied the Community Foundation a distribution. Those actions contradicted their representations to the Internal Revenue Service and the Washington State Department of Revenue in the respective estate tax returns, which reported a charitable bequest of $16,675,286 to the Community Foundation, thereby exposing the estate to tax penalties and interest charges.

The children and the co-personal representatives belittle Wendell Reugh's naming of Inland Northwest Community Foundation in the trust agreement by their referring to the Foundation as a default charitable organization. The children argue that the principal purpose of the trust was to qualify Wendell Reugh's estate for a charitable deduction under estate tax law. They argue that, under the trust agreement, Reugh principally wanted to establish his own charitable trust or donor advised fund in order to qualify for the deduction, but, for some unknown reason, Reugh never established the trust or fund. The co-personal representatives suggest that Wendell Reugh did not understand the terms of the trust.

The children and co-personal representatives hint that, because the Community

Foundation was not Wendell Reugh's first choice and because Reugh's overwhelming motive was to save taxes, this court should shun any concern about the co-personal representatives' adversarial treatment of the Community Foundation. The fact remains, however, that Wendell Reugh named the Community Foundation as a trust beneficiary regardless of whether the children would hold a role in designating contributions disbursed by the Foundation. The co-personal representatives cite no law excusing their violation of fiduciary duties because of the status of the Community Foundation in a lower caste.

We note that JoLynn Reugh-Kovalsky's and Steve Gill's violation of duties extend more to their roles as co-trustees of the Reugh trust than co-personal representatives of the estate of K. Wendell Reugh. Nevertheless, neither argues that this distinction precludes their removal as co-personal representatives. We note that Reugh-Kovalsky and Gill claim they never activated the trust, such that they have only acted on behalf of the estate. If so, they indirectly harm the interest of the Community Foundation in administering the estate by failing to follow the will's direction to place assets in the Reugh trust.

Throughout this appeal, JoLynn Reugh-Kovalsky has referred to the Inland Northwest Community Foundation, one of Spokane's leading eleemosynary organizations, as a "financial predator" asphyxiated with greed. The children and the co-personal representatives characterize the Community Foundation's conduct as

"defrauding" the children and waging a "campaign to seize" the estate's assets. Rather than advancing their cause, the appellants' extreme brickbats bolster the need for removal. The hostility and insults against one named in her father's trust prove that Reugh-Kovalsky cannot impartially administer the will.

Steve Gill lacks the direct conflict of interest that his co-personal representative JoLynn Reugh-Kovalsky holds. But Gill has taken no action to thwart the breaches of fiduciary duties by Reugh-Kovalsky. He has never exercised judgment independent of his co-personal representative, but rather echoed the positions taken by Reugh-Kovalsky, including answering the petition of invalidity of the trust by concurring in the invalidity.

*Issue 7: Whether sufficient grounds existed to remove JoLynn Reugh-Kovalsky and Steve Gill as co-trustees of the Reugh trust?*

*Answer 7: Yes.*

JoLynn Reugh-Kovalsky and Steve Gill also assign error on appeal to their removal as co-trustees of the Reugh revocable living trust. Nevertheless, the two present no independent argument beyond argument presented in opposition to their removal as co-personal representatives of the estate of K. William Reugh.

We observe that a trustee of a trust holds the same fiduciary duties held by a personal representative of a decedent's estate. In fact, the law molds the duties of a personal representative based on the obligations of a trustee. *In re Estate of Ehlers*, 80 Wn. App. at 761-62 (1996); *In re Estate of Vance*, 11 Wn. App. at 381 (1974). The same

51

facts that compel removal of Reugh-Kovalsky and Gill as co-personal representatives prescribe their removal as co-trustees of the trust. Particularly, the two's response to the children's petition to declare invalidity of a trust, in which they agree to the trust's invalidity, dictates removal. Seeking a court ruling regarding the validity of a trust may be acceptable for a trustee, but not actively agreeing to the invalidity of the trust. In addition, Reugh-Kovalsky and Gill contend no active trust exists, such that they are not even acting as trustees in contradiction to their fiduciary duty.

*Issue 8: Whether the superior court erred when appointing Northwest Trust Services as the new personal representative rather than following Wendell Reugh's will's directions for appointing a substitute personal representative?*

*Answer 8: We decline to address this question because the children failed to argue to the superior court of the need to follow the will's instructions.*

The children of K. Wendell Reugh next assign error to the superior court's appointment of Northwest Trust Services as the substitute personal representative. Nevertheless, when the superior court directed the parties to cooperate for the appointment of a new representative, the children refused to cooperate. They failed then to identify for the superior court the will's provision that creates a process for selecting a replacement. Instead, they argued the court had no power to appoint a successor.

Generally, issues not raised in the trial court may not be raised for the first time on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn. App. at 519 (2000). A party may not

generally raise a new argument on appeal that the party did not present to the trial court.

*In re Detention of Ambers*, 160 Wn.2d at 557 n.6 (2007). A party must inform the court

of the rules of law it wishes the court to apply and afford the trial court an opportunity to

correct any error. *Smith v. Shannon*, 100 Wn.2d at 37 (1983).

> *Issue 9: Whether we should grant any party reasonable attorney fees and costs on*
> *appeal?*

> *Answer 9: Yes. We grant Inland Northwest Community Foundation and*
> *Northwest Trustee an award of reasonable attorney fees and costs against the children*
> *and the co-personal representatives.*

All parties seek an award of reasonable attorney fees and costs on appeal. Both

parties cite RCW 11.96A.150(1) as the basis for any award.

RCW 11.96A.150 declares:

> (1) Either the superior court or any court on an appeal may, in its
> discretion, order costs, including reasonable attorneys' fees, to be awarded
> to any party: (a) From any party to the proceedings; (b) from the assets of
> the estate or trust involved in the proceedings; or (c) from any nonprobate
> asset that is the subject of the proceedings. The court may order the costs,
> including reasonable attorneys' fees, to be paid in such amount and in such
> manner as the court determines to be equitable. In exercising its discretion
> under this section, the court may consider any and all factors that it deems
> to be relevant and appropriate, which factors may but need not include
> whether the litigation benefits the estate or trust involved.
> (2) This section applies to all proceedings governed by this title,
> including but not limited to proceedings involving trusts, decedent's estates
> and properties, and *guardianship matters*.

(Emphasis added.) We deny the children's and the co-personal representatives' request for fees on appeal since they do not prevail on appeal. Generally, the losing party should not be granted fees. *In re Guardianship of Lamb*, 173 Wn.2d 173, 197-98, 265 P.3d 876 (2011).

The express language of RCW 11.96A.150 leaves attorney fee awards under the statute to the court's discretion. *In re Guardianship of Lamb*, 173 Wn.2d at 197. The statute allows a court considering a fee award to consider any relevant factor. *In re Estate of D'Agosto*, 134 Wn. App. 390, 401-02, 139 P.3d 1125 (2006); *In re Estate of Burks*, 124 Wn. App. 327, 333, 100 P.3d 328 (2004). The ability to pay does not provide an equitable basis for the award. *In re Guardianship of McKean*, 136 Wn. App. 906, 920, 151 P.3d 223 (2007). Rather, equity requires some finding of fault that in fairness requires a party to pay. *In re Guardianship of McKean*, 136 Wn. App. at 920. In *In re Estate of Jones*, 152 Wn.2d at 20-21 (2004), the Supreme Court granted heirs reasonable attorney fees and costs incurred in removing an estate's personal representative that had breached fiduciary duties.

We grant an award of reasonable attorney fees and costs incurred on appeal in favor of Inland Northwest Community Foundation and Northwest Trustee & Management Services against the children and the co-personal representatives. Payment of the award shall not be taken from trust or estate assets.

The nature of this appeal merits an award of reasonable attorney fees and costs. The co-personal representatives hold a conflict of interest that only increases the more they litigate issues and the more they argue and accuse the Community Foundation of predatory and duplicitous behavior. The children and the co-personal representatives raise contentions on appeal never asserted below.

## CONCLUSION

We affirm the superior court's removal of JoLynn Reugh-Kovalsky and Steve Gill as co-personal representatives of the estate of K. Wendell Reugh and co-trustees of the Reugh trust. We also affirm the appointment of Northwest Trustee & Management Services as successor personal representative and successor trustee. We grant the Community Foundation and Northwest Trustee an award of reasonable attorney fees and costs on appeal against the children and the co-personal representatives.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, A.C.J.

55